UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM MATZKE

      Plaintiff,

v.                                                       Case No.  2:15-cv-53
                                                       HON.  GORDON J. QUIST

DANIEL HEYNS, et al.,

      Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff prisoner William Matzke filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of the First Amendment, the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff is currently housed at the Bellamy Creek Correctional Facility in Ionia, Michigan. Plaintiff alleges that in 2013, while he was housed at the Chippewa Correctional Facility (URF), he made a request for weekly and monthly group Wicca religious services. Plaintiff's request was denied. Plaintiff argues that the failure to provide regular group Wicca religious services violated his rights under the First Amendment, RLUIPA, and Fourteenth Amendment. Plaintiff sued Defendants Director of Michigan Department of Corrections (MDOC) Daniel Heyns, MDOC Special Activities Coordinator Michael Martin, MDOC acting CFA Special Activities Coordinator David Leach, URF Warden Jeffrey Woods, and URF Chaplain James Bolton. Plaintiff sues Defendants in both their official and personal capacities. Defendants filed a motion for summary judgment. (ECF No. 26). Plaintiff has filed a response. (ECF No. 28).

In 2007, the MDOC recognized the Wicca faith as a religion and allowed Wicca group religious meeting for eight annual Sabbats in accordance with Policy Directive 05.03.150. While the

dates can vary slightly from year to year, the dates fall generally on January 31, March 21, April 30, July 22, July 31, September 21, October 31, and December 21. Plaintiff asserts that other religious groups are allowed more frequent meetings than members of the Wicca faith. On August 11, 2010, Plaintiff submitted a proposal to the Correctional Facility Administrator, Michael Martin, for equal meeting time for Wiccans. Plaintiff was informed by Chaplain James Bolton that his proposal had been denied. On January 17, 2013, Plaintiff was informed that the MDOC would not increase the number of Wicca group meetings without a court order.

By letter to Warden Jeffrey Woods, Plaintiff requested the same opportunities for Wicca members that are provided to members of other faiths. Plaintiff pointed out that the posted religious rule number 11 stated that "All prisoners that have the same religious affiliation are allowed to meet weekly with time and space permitting." Plaintiff complained that posted housing unit number 10 and posted yard unit number 37 placed restrictions on the ability to further religious spiritual development with others. On July 10, 2013, Chaplain Bolton denied Plaintiff's request.

A letter was sent on October 7, 2013, to Michael Martin and the Chaplaincy Advisory Council, explaining that the "note" within attachment A of Policy Directive 05.03.150 discriminates against the Wicca faith, because every other faith has weekly meetings. Plaintiff grieved these issues. On May 1, 2014, the posted religious program rules were changed. On May 6, 2014, the posted yard rules were changed. A proposal was sent to David Leach to resolve the grievance and to provide the "vital tenet of Esbats." That proposal was rejected without explanation.

Plaintiff complains that although the posted housing rules were changed, the rules continue to restrict religious gathering in the yard, in the programs building, and in the housing units. Plaintiff asserts that these rules impose undue restrictions on Wicca teachings. Plaintiff submitted a proposal to the Warden on August 1, 2014, seeking a special observance as provided in the Chippewa Correctional Facility Prisoner Guide book. On August 21, 2014, a proposal was submitted requesting

2

thirteen full moon Esbats per year in observance of the basic tenet of Wicca. Plaintiff received no response.

As noted above, Plaintiff argues that Defendants violated his First Amendment right to the free exercise of religion by denying basic tenets of his faith, violated the Fourteenth Amendment by imposing special rules on a single group of individuals based solely on their religious affiliation without being reasonably related to a penological interest, and violated the RLUIPA by imposing substantial burdens on religion without any governmental interest. Plaintiff requests a declaratory judgment stating that Defendants violated the Constitution. Plaintiff also seeks a preliminary and permanent injunction ordering Defendants to provide equal treatment to the Wicca religion by giving equal opportunities afforded to all MDOC recognized religious faiths, and to provide the Lunar Holidays known as Esbats. Finally, Plaintiff seeks compensatory damages of $1,000.00 per equal protection violation, and punitive damages of $10,000.00 against each Defendant.

Defendants argue that the Court should dismiss the RLUIPA claim because the Defendants did not impose a substantial burden on Plaintiff's ability to practice his Wicca faith. Defendants argue that Plaintiff's 42 U.S.C. § 1983 claims should be dismissed because Plaintiff has failed to show that each of the Defendants had the authority to increase the number of Wicca services during the year. Additionally, Defendants argue that Plaintiff has failed to show that his sincerely held belief requires weekly or monthly services and that Plaintiff has failed to show Defendants took an action to substantially burden that belief. Defendants argue that the MDOC lacks sufficient time, space, and manpower to administer Wicca services and that Plaintiff's equal protection claims should be dismissed. Alternatively, Defendants argue an entitlement to qualified immunity because Plaintiff has failed to show a violation of any clearly established law that a reasonable person would have known. For these reasons, Defendants argue that the complaint should be dismissed.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

> The RLUIPA statute provides, in pertinent part, that
>
> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

4

42 U.S.C. § 2000cc-1(a).  Defendants argue that Plaintiff may not obtain money damages under the RLUIPA.  Although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under the RLUIPA.  In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment.  *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA.").  The Sixth Circuit held that the RLUIPA does not allow for monetary damage claims against prison officials. *Haight v. Thompson*, 763 F. 3d 554, 570 (6th Cir. 2014).  Plaintiff may maintain only an injunctive relief action under the RLUIPA against prison officials.  *Cardinal*, 564 F.3d at 798-801.

Defendants argue that Plaintiff has failed to show that any of the named Defendants had the authority to increase the number of Wicca services or meetings.  Defendants state that "only the CFA Deputy Director may make the final decision as to whether a religious group will be granted MDOC recognition, and if so, whether group religious services and activities and personal religious property will be allowed."  ECF No. 26 at PageID.135-136.  PD 05.03.150(L) provides:

> The Deputy Director shall make the final decision as to whether a religious group will be granted Department recognition, and if so, whether group religious services and activities and personal religious property will be allowed.  The group shall be granted recognition if it is determined to be a bona fide religious group with beliefs and practices not adequately represented by an existing recognized religious group, based on any recommendation received from the CAC. The decision whether to allow the group to conduct group religious services and activities, and whether to allow personal religious property, shall be based on whether the practice of the religion or possession of the property item would pose a custody and security threat.  The decision whether to allow the group to conduct group religious services and activities also shall be based on the number of prisoners identified as belonging to the religious group.  All Assistant Deputy Directors (ADD) and Wardens shall be advised of the final decision.

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely

6

bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988).  Finally, supervisory liability claims cannot be based on simple negligence.  *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Defendants argue that they lack personal involvement in the religious services that Plaintiff received.  As support for this argument Defendants cite the affidavit of Defendant Heyns at paragraph 8-9.  ECF N0. 26-1, PageID.152.  Defendant Heyns stated:

> 8.  I have no personal involvement in the allegations which form the basis for prisoner Matzke's complaint.
>
> 9.  I do not know prisoner Matzke and I was not personally involved in any decisions regarding Wiccan services or his religious requests.

Plaintiff has shown however, that MDOC Director Heyns had the authority to sign policy directives and Director's Office Memoranda.  PD. 01.04.110.  Defendants Woods, Martin, Bolton, and Leach do not make any arguments to support their claims of lack of personal involvement.  It is noted that the Warden and CFA administrators are authorized to issue operating procedures.  PD. 01.04.110(P).  In the opinion of the undersigned, there exists an issue of fact whether each of the Defendants were personally involved in the decision to deny Plaintiff religious services and group worship.

Defendants argue that Plaintiff cannot establish a First Amendment claim.  Plaintiff argues that he should be able to meet with other Wiccans in a religious service more than eight times per year.  Plaintiff argues that he should be able to meet weekly in the same manner as other religions allowed by MDOC policy.  Alternatively, Plaintiff asserts that he should be allowed to meet at least once a month to celebrate the thirteen Wicca Esbats that require observance of each moon phase.

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. Does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. Are there alternative means of exercising the right that remain open to prison inmates;

3. The impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. Whether there are ready alternatives available that fully accommodate the prisoner s rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91). Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational").

8

If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted).  It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint."  Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

As to the first factor, Defendants assert that the limitation of eight Wicca services is valid and rationale.  The limitation to Wicca services eight times per year arose out of the lawsuit *Marsh v. Granholm*, 2007 WL 2683216 (W.D. Mich. 2007).  During the lawsuit, the MDOC officially recognized Wicca as a religion and allowed eight yearly group services.  The MDOC limited the Wicca religion to eight services "per year due to staff and budgetary constraints and due to the fact that most Wiccans 'practice the solitary path of Wicca' and do not congregate on a weekly basis."  *Id.*[1] Defendants argue that those same concerns are still present and that the MDOC does not have the resources to accommodate weekly services or any increase in services for those prisoners practicing the Wicca faith.  Defendants point to the fact that Plaintiff testified that all Wiccans are witches, but not all witches are Wiccans and that Plaintiff looks differently at Wiccans who are open and faithful to their practice from those who do not openly practice their religion.  Plaintiff testified that each Wiccan is a member of his or her own clergy.  Plaintiff testified that in 2010, there were more than 10-

---

[1] The Court did not issue an order or judgment requiring the MDOC to recognize Wicca as a religion and to provide eight services per year.  It appears that the MDOC chose to recognize the Wicca religion and chose to provide eight services per year while that prior action was pending.  The Court accepted the MDOC's action as an accommodation of the Plaintiff's requests in that case.  It appears that the issue regarding the number of Wicca services allowed by MDOC policy has not been litigated in this court until this case.

9

20 Wiccan inmates who did not attend group services, and that there did not exist one doctrine that pertains to the entire Wicca faith.

Plaintiff counters that claim, by arguing that an increase in Wicca services would not result in any financial effects or security concerns for the MDOC. Plaintiff states that there would be no cost to increase Wicca Services, because no funding for the services comes from the MDOC. Further, Plaintiff states that no increase in staffing would be necessary, as the existing staff could easily accommodate the increase in Wicca services.

As to the second factor, Defendants argue that Plaintiff already has a means to practice his Wicca beliefs inside the prison walls. Defendants argue that the last two factors weigh in favor of the MDOC because it does not have time, space, or staff available to increase Wicca services, and any increase in Wicca services would require cancellation or rescheduling on other group services which would impact the constitutional rights of other prisoners.

Interestingly, there has been no discussion from the MDOC in this case or the *Marsh* case as to why it was decided that eight Wicca services would be allowed. The MDOC does point to the undisputed fact that not all Wiccans attend group service and that some, if not many Wiccans practice solitarily. Moreover, Plaintiff has not shown that it is his sincerely held belief that Wiccans must meet weekly or that Wicca teaching requires weekly meeting. In the opinion of the undersigned, Plaintiff's claim that Wiccans should be allowed to meet weekly for group services should be dismissed from this case. However, Plaintiff has set forth some Wicca doctrine which supports the claim that Wiccans should meet thirteen times a year to celebrate the moon phases, and that the celebration of moon phases is a core universal tenant of the Wicca religion. Defendants have not set forth any evidence to counter that claim. Moreover, Defendants have not established why providing five more Wicca services per year would have a negative economic impact or cause any impact on other services or resources including staffing. The record is completely silent as to how the MDOC decided that

eight yearly Wicca services were enough to accommodate the inmates who practice the Wicca religion. In the opinion of the undersigned, Plaintiff's claim that thirteen group Wicca services per year should be allowed should be litigated in this case and should not be dismissed at this time. Similarly, Defendants have failed to address this claim under the RLUIPA.

To the extent that Plaintiff has claimed that housing and yard rules have negatively impacted his ability to gather with other Wiccan members in non-approved group meetings, Plaintiff has failed to show any violation of his rights. There are legitimate reasons to prevent the gathering of inmates in unsanctioned group settings.[2] Plaintiff has not overcome those reasons. More importantly, Plaintiff has not shown how any yard or housing restrictions have violated his right to practice his religious beliefs under either the RLUIPA or the First Amendment.

Plaintiff claims that Defendants violated his equal protection rights because most other religious groups are provided weekly meetings and Wiccans are not allowed to meet weekly. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal

---

[2] Plaintiff has not set forth exactly the restrictions or specifically explained how the restrictions violate his right to practice his faith. The court assumes that the restrictions involve a prohibition of groups gathering in the housing units or during yard time. There are obvious security interests in prohibiting unsupervised group meetings in the housing units and during yard time.

11

or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

The United States Supreme Court explained that different treatment among religious groups is a not a constitutional violation when considered in the context of the prison population:

> We do not suggest, of course, that every religious sect or group within a prison-however few in number-must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minster be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear or penalty.

*Cruz v. Betto*, 405 U.S. 319, 322 n.2 (1972).

In the opinion of the undersigned, Plaintiff has not shown that religious groups that have weekly meetings are similarly situated to Wicca with regard to the number of prisoners that practice that particular religion or in the service requirements or traditions of those religions. For these reasons, it is recommended that Plaintiff's equal protection claim be dismissed.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012;

*Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). In the opinion of the undersigned, there exists factual issues regarding whether Plaintiff's religious rights were violated under the RLUIPA and the First Amendment when Defendants failed to accommodate Plaintiff's request for thirteen group Wicca services per year.

Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 25) be granted, in part, dismissing Plaintiff's claims for monetary damages under the RLUIPA, Plaintiff's claim of an equal protection violation, Plaintiff's claim for weekly group Wicca meetings, and Plaintiff's claim that URF yard rules and housing rules violated his religious rights under the RLUIPA, the First Amendment, and the Equal Protection Clause. It is further recommended that the Defendants, motion be denied as to Plaintiff's claim that Wiccans should be provided thirteen group services per year instead of eight, under the RLUIPA and the First Amendment.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:      December 6, 2016                    */s/ Timothy P. Greeley*
                                                TIMOTHY P. GREELEY
                                                UNITED STATES MAGISTRATE JUDGE